Welcome. It's nice to see you all in person. Our first case for our argument this morning is Finch v. Mario Treto. Mr. Lutkins? I hope I pronounced that correctly. When you have a name like that, you really don't worry too much. Close. Very, very close. Thank you. May it please the court, Philip Lutkins on behalf of the plaintiff appellants. First of all, I want to thank the court for expediting this appeal process as the timeliness, as you've seen in the briefs, is very important. I represent two plaintiffs that desired and still desire to be able to receive a cannabis dispensary license. One, Mr. Finch, served in the military until 2019, attempted to apply at that time, but did not live in Illinois. He moved to Illinois in December of 21 and was found he was still not eligible. Three months later, the suit was filed. Mr. Toyoga, the other appellant, is a proven cannabis investor who decided not to file because he found it would be futile. I don't think there's really any doubt that the Illinois Cannabis Act residency requirements violate the Commerce Clause. You look at Tennessee. Judge Ripple, I can tell you that's a threshold matter, though. We've got, you know, two situations here, the 2001 and the 2002 licenses. With respect to these 2001 licenses, is there really anything left of the case? Well, I think there is, and let me kind of explain why. And I think you mean the 2021, right? I'm sorry, I said yes. I don't mean to interrupt. It happens to us every now and then. It's getting to happen to me way too often. I thought it was still 2000. Wishful thinking. I think there is some relief that can be granted. One is these are contingent licenses. They're not issued. These are people who have to go back out, have to prove certain things to the state before they can obtain an actual license. So there is that issue. I would agree that some of these people have taken actions based on that, but they still have to complete certain steps in order to become licensed. And maybe you could refresh our recollection with what those steps are. The state may have a better handle, but some of those things are like they have to show that they still meet the requirements, that they have space, that they have the ability to do those. Some are financial. I think most of them are location-wise. They have a rented space. I mean, I'm not going to say that those people haven't incurred some cost. There's no doubt about it. Number two is I think one of the forms of relief, as you know, this court and this district court had broad powers, broad equitable powers. While we asked because of the timing that the 2021 licenses that were issued in 2022, so it gets confusing, they were issued in late July 2022. They had not been issued when Judge Pallmeyer ruled on this and when we filed the lawsuit. So it was only after that that they were issued. So we didn't specifically ask for a corrective lottery, which is what happened in the state court, but that's also available to us. And I think it's also important. You mentioned that in your brief. How would a corrective lottery work at this stage with respect to the 2021 licenses? The point would be that there are 500 possible licenses. Only 185 will have been issued with the issuance of the 2021 licenses. What happened in the state court is that those licenses, those people who thought that they were improperly denied an opportunity for a license were put in a lottery. And so like in my case, my clients would have a, I forget how many, two out of 110. They'd have a certain percentage. They'd have a percentage based on the number of people that were eligible in that particular location. Because each license, each location has its own number of licenses. They could apply in certain locations and they have a percentage just like the rest of them did. So it would be fair. Now, at the end of the day, you could say that takes away two of the 500 licenses maybe if they were both granted licenses. I'm not sure that has to be either. This court and its broad powers, as we've seen many times in other kinds of cases, they can modify the legislation to make it fair. So if my clients were able to get two licenses, there's nothing that says the lower court couldn't say, okay, no, no, you've got to grant 502. We don't want to hurt anybody else. You're talking about a fairly contingent situation. How does that justify the preliminary injunction? The preliminary injunction is pretty extraordinary. It is extraordinary, except in a case where you have a constitutional violation, right? I mean, the case law is pretty clear that once you have a constitutional violation, I think even the state, they're not going to admit there's a constitutional violation. They keep fighting it. But there's no real case law they've cited that shows that there is not a constitutional violation here. The Tennessee Wine case, the main case that just came out of the First Circuit within the last month, those are pretty clear indications that there is a Commerce Clause violation here. And we didn't really see any cases by the state to dispute any of that. So the point is that when you have such a strong likelihood of success, when you have a constitutional violation, the balancing becomes very, very hard to tip this scale the other direction on your sliding scale. Can I ask you just two quick questions here? Of course. Number one, in the district court, did you ask the district court to enjoin the issuance of the final license or just the contingent license? Because it seemed to me like the district court litigation concerned the contingent license. I think the focus at that time was on the contingent license, but the actual relief requested was the banning of any use of residency requirements. Why can't the district court deal with that on the merits? Well, they can. But the problem is, as I talked about, there's a bunch of different kinds of relief available. One of the relief available becomes less and less available as you go down time. It's really unfair at some point to these people who receive the new licenses. Now they're in business. Now they're whatever. And one of those forms of relief is now gone. And as a sliding scale of what's important or what the equities are, the longer we go, the harder it is to kind of undo that. Now you may decide you don't want to undo that at all. I don't know, but I think that's a possible avenue. And I don't know, did I answer both questions, Judge Gersh? I apologize. That's okay. Part of the district judge's equitable balancing concerns the substantial delay in filing suit. Perhaps you could address that. Yeah, I would. I think you have to remember what's going on in this whole process and what's in the record. Lottery at issue was not created until July 2021. The act was passed before. There's been a bunch of amendments. Constitutional violation in here is in the regulatory scheme, which came into being in 2019. The statute originally came to be in 2019. The statute kept getting amended. The rules had not passed JCAR at that point. There was a bunch of things that still had to occur. When did the residency rule come into being? I think the residency rule was part of the statute that was later amended, and it was continued in the statute. It was part of the statute in 2019. There was a two-year delay in filing suit. That's a pretty substantial equitable factor against you. I'm not going to say it's not a factor, okay? But delay alone is not the be-all and tell-all of these kinds of cases. But it makes the sunk investment equitable consideration and harm to the conditional license holders pretty significant. I would agree with you to a certain extent if we had filed this in August of 2022. But we didn't. We filed it in March. Now, understand what's going on in March at this point. Now, here, first of all, one of the plaintiffs or appellants didn't move to Illinois until December of 2021. Also, what you have going on is the state court litigation. Nothing's finalized at this point. We still have the state court litigation. We have these corrective lotteries going on. There is nothing issued until July of late July. But the point is everyone who applied for the license, that group does not include your clients. Absolutely. Has a sunk investment. And the conditional license holders have a larger sunk investment because they have taken steps to comply with the requirements for the full license. All of which occurred after this litigation and all of which occurred. Well, the initial sunk investment did not. Correct. But the initial sunk investment is one they would have incurred anyway, right? There's no prejudice to them because they would have incurred it anyway. Just like and then they took their chances on the lottery. I mean, that's the risk you take when you file. And you also have to remember, I mean, my clients could have filed. I mean, not the lawsuit, but they could have filed for a license. It was a futile act. And as we've said in our case, a futile act isn't necessary. Yeah, I'm not challenging standing. But their opportunity to file suit existed as long ago as 2019 to challenge the residency requirement on dormant commerce clause grounds. I see it could have, but I don't think there's any prejudice. Well, they were both non-residents at the time. Yes. They could have filed suit in 2019 when the statute was passed. They could have. But now in 2021, we're passing a new law. Now, I understand that law could have. Oh, yeah, it's been a moving target, no question. It's clearly been a moving target. I get it. It's still a moving target today on the next license. Right, but the dormant commerce clause violation inheres in the statute. That's been in existence for now three years, two years before you filed suit. But it also reoccurs in the July 2021 statute. Right, but the basis for the suit and the opportunity to file the claim existed long ago. And given the equities here, that was the time to challenge it. I don't disagree they could have filed in August of 2019. However, you now have a new law in July 2021 that starts the time frame again. Okay, that law could have been something completely different. And no one knew what that law was going to look like. And in Springfield, as you know, who knows whatever is going to come out of there. So that's the concept. And I know I'm about out of time, at least of my original. I hope I answered your question. If not, I apologize. Thank you. Thank you very much. Mr. Bichette. And I hope I pronounced that correctly. There's a lot of options. Anything that starts with a B, I'll take. Okay. So may it please the court. My name is Frank Bichette, and I represent the Secretary of the Illinois Department of Financial and Professional Regulation. At various times in the district court and now on appeal, plaintiffs have asked for four different types of preliminary injunctive relief regarding the 2021 and 2022 licenses. The district court did not abuse its discretion by not granting any of them for multiple reasons. First, in the district court, plaintiffs sought an injunction to stop the department from issuing the 2021 licenses. And the court denied that request for that particular relief, finding that the balance of equities weighed against it, even if plaintiffs had established a likelihood of success on the merits. On that request, plaintiffs have forfeited any challenge to that part of the district court's ruling by not presenting any arguments on it in their opening brief. In addition, that request is now moot because the licenses have been granted. And in any event, the court did not abuse its discretion in its balancing of the equities. Second, on appeal, plaintiffs argue that the district court should have ordered a corrective lottery. But the district court did not abuse its discretion by not granting a relief that was not requested. And as the district court pointed out, the department could not conduct a corrective lottery until the plaintiffs provided more information. Third, on appeal, plaintiffs argue that the district court should have enjoined the enforcement of provisions that they believe prevent them from investing in a licensed entity. But the district court did not abuse its discretion by not granting that type of relief based on an argument that was not timely raised or fully briefed. And then fourth, in the district court and again on appeal, plaintiffs ask to stop the enforcement of potential criteria regarding the 2022 licenses. But the district court did not abuse its discretion there because any such claim was unripe. Beginning on with the request to stop the 2021 licenses, again, plaintiffs have forfeited any challenge to that part of the district court's ruling, even though that formed the bulk of the briefing and the district court's decision. They did not present any arguments in their opening brief. And if you compare the opening brief to the reply, you'll see that the arguments they make in the reply on this issue are completely absent from the opening brief. Instead, the plaintiffs argued that the court abused its discretion by not granting other relief as to corrective lotteries and investment provisions. And their only real response in their reply is that they filed a motion after they filed their brief asking for an injunction to stay the district court's decision, but they have no authority to support the contention that that overcomes forfeiture. On mootness, as your honors have already noted, the 2021 licenses have already been issued. Although plaintiffs argue that there's this issue between a conditional license and a full license, what they sought to enjoin in the district court was the issuance of the conditional licenses, and that has now occurred. And as I think was demonstrated in the opening arguments, any analysis as to the propriety of an injunction to stop the issuance of full licenses would be different than the conditional licenses, because now the winning applicants have even stronger reliance interests. So the balance against an injunction is even stronger now than it was at the time. Can that be dealt with on the merits in front of the district court? Yes, your honors. But what if they win? If they win. What if the plaintiff wins? Well, if they win on the merits, so one option that the court and the department discussed was the potential of a corrective lottery, and that would allow them to potentially obtain a license without stopping the proceedings as to all the other applicants. But the problem is that the plaintiffs have not presented any evidence to establish that they would qualify for a corrective lottery. So let's talk about the state court process a little bit, because the department suggested they could be in the same. But how would a corrective lottery work? How would a corrective lottery allow them to obtain a license if they were right on their Dormant Commerce Clause argument? Right. So the corrective lottery structure following the state court is for those litigants who established that, but for the alleged error. They would have qualified for one of the 51 lotteries. And then the department would run a corrective lottery, and if they won the corrective lottery and then prevailed on their claim, the department would grant an additional license. And the department has the legal authority under the legislation to do that? Yes, Your Honor. But the problem here is that plaintiffs are not asking to be put in the same position as those state court litigants. They're asking to be put in a better position, because their argument is that they don't have to present any evidence showing that they would have qualified for a lottery or a license, but for the challenged criteria. So there's a significant mismatch here before the corrective lottery that they're asking for and the corrective lotteries that have occurred. And the district court pointed this out when it was balancing the equities, because the district court said, you know, without any evidence that plaintiffs are ultimately going to be qualified to receive a license, even without the use of the challenged criteria, there's no benefit to them in stopping the issuance of the licenses as to everybody else. Because even if you stop the issuance of the other licenses, if the plaintiffs can't establish that at some point they're going to be entitled to a license, then there's no point in stopping the 2021 licenses. And so on the corrective lotteries, that's one of the two reasons why the district court did not abuse its discretion. The first is that plaintiffs never asked for a corrective lottery in the district court. It was discussed by the department as an option if they ultimately won on the merits. But even when it was discussed at oral argument, plaintiffs never said that they would provide the information that would be necessary to run a corrective lottery. They said maybe they would provide that information at some point. And so the corrective license decision, because there really wasn't a decision, there was no abuse of discretion because it wasn't requested in the district court and it would have been impossible to conduct a corrective lottery without more information. As to the investment provisions, the district court did not abuse its discretion by not enjoining those provisions based on an argument that was not timely raised and or fully briefed. As the district court found, the plaintiffs did not raise any argument about this investment provisions in the memo in support of their motion for preliminary relief. Instead, they raised it for the first time in their reply. And even there, they only raised it in support of their request for an injunction to stop the issuance of the 2021 licenses, not as a standalone request to enjoin the enforcement of those provisions. And as a result, there was no briefing on this issue, which, as the district court pointed out, was important because the act on its face does not prevent any investment in licensed entities by out-of-state investors. And it's the department's position that no such prohibition exists. Although the plaintiffs point to an advisory notice that was issued, I think, in 2019, that goes to investment in applicants. Once an applicant receives a license and is a licensed entity, it's the department's position that there is no prohibition on investing in those entities. So the district court did not abuse its discretion by not granting relief when it wasn't fully briefed or properly raised. What about the change in ownership rule? Isn't that what the issue is about the challenge to the investment structure? I mean, I believe they're challenged. So if there's a change in ownership, I believe that's a material change is the provision that they're talking about. And then you need to notify the department that that has occurred. But it's the department. But there's nothing in the statute that says, you know, there's just because you make a material change, you know, that makes it impossible to invest. And it's the department's position that that doesn't prevent investment. It prevents investment in an applicant. Like there can't be a change in ownership during the application period. But once an applicant receives a license, there's no bar on investment. That's the department's position, and that's something that we could have briefed more fully in the district court. And to the extent that plaintiffs believe the district court overlooked that request, they could have either filed a motion to reconsider or clarify, pointing out to the court, you know, we asked for this, so could you please, you know, address it? Or they could file a new motion for a preliminary injunction. Or they can argue it on the merits of the underlying claim. Affirming the denial of a preliminary injunction here doesn't, you know, prevent the plaintiffs from making these arguments. It just ensures that they'll be fully briefed and presented to the district court in the first instance. The change in ownership rules are in the regulations, not the statute. Well, there's a statute. There's a material change provision where there's a requirement that if there's a material change, which would include change of ownership, I believe they would have to notify the department. But there's nothing in the statute saying that. After they notify the department, that's like, you know, a bar on or disqualification to receiving a license or anything like that. But there are residency restrictions. The ownership of the license. There are residency criteria for obtaining a conditional license. So as part of the application process for the 2021 licenses, not the 2022 licenses, but as to the 2021 licenses, there were certain points that were tied to residency as an applicant. But once someone's a licensed entity, that's a different issue. And that's something that, you know, the department pointed out during oral argument that we could brief more fully in the district court. But we weren't able to because it wasn't raised until the reply. And if the plaintiffs, again, want to make this argument in the district court, they certainly can. Nothing's stopping them. They can, whether in a preliminary or permanent posture. On the 2022 licenses, the district court didn't abuse its discretion there because those claims were not ripe. As the district court pointed out, there were proposals to change that for different criteria for the 2022 licenses. And it was a reasonable exercise, the court's discretion to say, well, you know, we're going to wait to see what the final rules actually are. And as pointed out in the briefing since then, the department has proposed rules that eliminate residency criteria for the 2022 licenses altogether. And I can update this court that on Tuesday, Jay Carr had a meeting and those 2022 rules that do not have any residency criteria have made it through Jay Carr and are now close to being finalized. And once they are finalized, I'll notify the court, you know, through a letter. So the district court was proved right that, you know, there was no points in ruling on potential 2022 criteria because it could turn out that those criteria never came into being. And on the balancing points, to begin, this court need not reach the district court's decision on the balancing of the equities regarding the request to stop the issuance of the 2021 licenses because that request has now been forfeited and moved. But if this court does get there, there was no abuse of discretion because the equities weighed heavily against a preliminary injunction. The district court, in fact, identified four different factors that all pointed in the same direction. There was at the over two year delay in bringing this claim as was already discussed, but that wasn't it. The court also went on to say that plaintiffs had made no showing that they'd ultimately be able to qualify for a license because they never provided any information that absent the challenged criteria, they would receive a license. So the equities of on their, on plaintiff's side were very slim if they existed at all. And then in addition, the court considered the injuries to the third parties in the public, the winning applicants, the state and finally getting this program up and running and operational. And those interests have just grown stronger since the conditional licenses have been issued. And finally, the court considered federalism concerns, which were valid concerns, giving that this is a state court proceeding that has administrative and judicial proceedings that have been going on for years. And plaintiffs came in at the last minute with no explanation for why they waited over two years to file their claims. And so for all those reasons, the equities weighed very much in favor of not granting an injunction. And there was no abuse of discretion by the district court. And so unless your honors have any further questions, we would ask that you affirm the denial of a preliminary injunction here. Thank you. Obviously I have a bunch to run through real quick, so I'll try and be as fast as possible. Um, as far as Jay Carr's action yesterday, it's not before you, but that Jay Carr action, um, actually set forth that it was contingent on further state general assembly approval because it did not comply with the statute. So there is further things that need to be done in that regard. As far as I'm kind of going backwards, as far as federalism, uh, Woodard was the case the court relied district court relied upon. It's not the same. We were not asking, which is really the federalism cases that we've been able to find for someone to interfere with an ongoing state litigation. That's not what was happening here. Um, let me, uh, 22, 2022 licenses are not right. Well, we just talked about that. I apologize. Um, okay. They talked a lot about waiver. Um, and it's kind of like we don't want to talk about the constitutional violations. So we're going to try and find waiver wherever possible. We set forth in our brief where we've raised these in the past. The other thing about this investment issue and waiver, you have to remember that none of this comes into play. The investment issue, none of it comes into play is if the relief we asked for is granted, which is declare the residency requirement unconstitutional. And in this case, enjoying anybody from using the residency requirement as part of any license. That's what we asked for in paragraph four of the preliminary injunction. Um, we, we heard that we didn't give enough information about whether they were qualified, but then we heard the state court was statement. The allegations were, but for the alleged air, they would have been granted the ability to qualify. That's exactly what we've said here. The state court lottery is based upon, as you can see in the record, Hey, if you win the lottery, now you have to prove that you should have gotten those extra points. It's not much different than if you win the lottery, you have to show us that you get the points. There's really not. There's very little difference. The difference is the timing slightly because some of their application is already out there, but it's kind of like it's futile act, but you want us to now show you that we could apply. Um, there's a lot of, as you mentioned earlier, judge Sykes, there is a lot of, there's other costs that have to be incurred and it's not just a $5,000. There's other things that they would have had to incur to do this, not knowing or not having a declaration that their rights have been violated. That's kind of throwing, you know, good money after bad to a certain extent. Now, one thing we didn't hear the state say at all today was the residency requirement is legal. Not one time in the, have they said that today? That's important because when you balance that with the likelihood of the likelihood of success with the fact that you have a constitutional violation, this isn't just, Hey, Phil got his contract breached. This is a constitutional violation. That burden is pretty heavy and the courts have been very reticent and honestly, mostly in the first amendment world. We haven't seen a lot of this outside the first amendment, but the courts have been reticent to say, Hey, the balancing somehow outweighs that. In fact, the case law on the first amendment side has been, it's almost assured that the balancing on the other side is never going to match the fact that you have a constitutional violation. Uh, I want to talk about mootness for a few steps. Actually I don't have really time, but I, I would like to at least, I know the court knows this, but the urgency of this situation has obviously become apparent. We have things that are going on on a daily basis. We heard about Jay car yesterday. We know these people are out. These licensed applicants are out expending more money. I don't want to see them extend any more money if it's not going to be viable. I don't want to see my clients have to spend a lot more money if it's not going to be viable. So to the extent I would urge, I know I can't ask a heck of a lot here, uh, a timely or quicker resolution. I would appreciate it. Thank you very much for your time. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement.